United States District Court
Southern District of Texas
**ENTERED**
February 04, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

EVERARDO GARZA,                 §
                                §
            Plaintiff,          §
                                §
v.                              §        CIVIL ACTION NO. H-14-0767
                                §
CITY OF LA PORTE,               §
                                §
            Defendant.          §

## MEMORANDUM OPINION AND ORDER

Plaintiff Everardo Garza ("Plaintiff" or "Garza") sued the
City of La Porte, Texas ("Defendant" or "La Porte") seeking
declaratory and injunctive relief invalidating a La Porte ordinance
governing commercial truck routes and parking.[1] Pending before the
court are Plaintiff's Motion for Final Summary Judgment
("Plaintiff's Motion") (Docket Entry No. 30) and Defendant City of
La Porte, Texas' Motion for Summary Judgment ("Defendant's Motion")
(Docket Entry No. 31).

### I. Background

Garza is a licensed commercial truck driver.[2] His daily
routes run through the La Porte, Texas, area.[3] Garza drives these

---

[1]See Plaintiff's Original Complaint and Request for Declaratory
Relief ("Complaint"), Docket Entry No. 1, p. 4 ¶¶ 24-25.

[2]See Oral Deposition of Everardo Garza ("Garza Deposition"),
Exhibit C to Plaintiff's Motion, Docket Entry No. 30-3, p. 18 at 70.

[3]See id. p. 4 at 14-16; p. 7 at 27-28; p. 13 at 49-51. Garza
testified that "I just cut through town, don't ever stop in
                                              (continued...)

routes from 7:00 a.m., when the Port of Houston opens, until 5:00 or 6:00 p.m., as a driver for Gulf Winds International.[4] He has driven for Gulf Winds International for twelve years and almost exclusively in La Porte for the two years before this action.[5] La Porte is a small city with heavy commercial truck traffic due to its location as the only municipality between the Port of Houston's two high-capacity container terminals.[6] La Porte has selected certain roadways as the "designated truck routes" in the city.[7] Garza received training from Gulf Winds International regarding the designated truck routes in La Porte, and signs are posted

---

[3](...continued)
Baytown." Id. p. 13 at 50, but also testified that on the day he received his citation, he left the terminal in Seabrook and "was going back to pick up another container from Baytown, Walmart distribution, to bring back to our terminal." Id. p. 7 at 27.

[4]See id. p. 3 at 12; p. 4 at 13, 15.

[5]See id. p. 4 at 13; p. 18 at 70-71.

[6]See Affidavit of Corby D. Alexander ("Alexander Affidavit"), Exhibit B to Defendant's Motion, Docket Entry No. 31-4, p. 2 ¶ 3. "Based on statistics provided by the Port of Houston, the port is ranked first in the United States in foreign waterborne tonnage (for 19 consecutive years); first in U.S. imports (for 23 consecutive years); first in U.S. export tonnage (for 6 consecutive years) and second in the U.S. in total tonnage (for 23 consecutive years); and the Port of Houston reports that it currently handles approximately 66 percent of all the containerized cargo in the U.S. Gulf of Mexico. For statistics relating to the Port of Houston and its container terminals, see http://www.portofhouston.com and http://www.portofhouston.com/container-terminals. Id.

[7]See La Porte City Ordinance No. 2015-3579 ("Amended Ordinance") § 70-231, Appendix A to Plaintiff's Motion, Docket Entry No. 30-14, p. 5.

indicating those routes.[8] Designated truck routes in La Porte include Highway 225 (including frontage roads), Highway 146 (including frontage roads), Underwood Road, and parts of Barbours Cut Boulevard, 16th Street, Fairmont Parkway, West Main Street, Powell Road, Export Drive, South 16th Street, North Broadway, North "L" Street, North "J" Street, and North 8th Street.[9] Some of these roads, including Highways 225 and 146, are also part of the federally designated "National Network of highways" (the "National Network").[10] La Porte voluntarily designated any non-National Network roads as truck routes within the city, and Garza does not challenge the truck routes themselves.[11]

On January 25, 2014, Officer Boles of the La Porte Police Department issued a citation to Garza for driving his truck tractor (without a trailer attached) off the city's designated truck

---

[8]See Garza Deposition, Exhibit C to Plaintiff's Motion, Docket Entry No. 30-3, p. 4 at 16; p. 5 at 17-20; p. 6 at 21-22.

[9]See Amended Ordinance, § 70-231, Appendix A to Plaintiff's Motion, Docket Entry No. 30-14, p. 5 (listing "those streets and thoroughfares within the corporate limits of the city . . . hereby designated as truck routes"). Garza testified that Spencer Highway and Bay Area Boulevard are also designated truck routes. See Garza Deposition, Exhibit C to Plaintiff's Motion, Docket Entry No. 30-3, p. 5 at 19.

[10]See National Highway System: Houston, TX, U.S. Department of Transportation, Federal Highway Administration, Appendix F to Plaintiff's Motion, Docket Entry No. 30-19. As discussed below, federal law generally requires states to allow commercial motor vehicles (of certain dimensions and weight) to use the National Network.

[11]Plaintiff's Motion, Docket Entry No. 30, p. 12.

route.[12]  Garza was traveling north on Highway 146 through La Porte from the Gulf Winds International terminal in Seabrook and had taken the exit ramp towards Spencer Highway.[13]  He was on his way to pick up a container from Baytown to bring back to the terminal and had decided to stop at Whataburger.[14]  After exiting and traveling along the feeder road briefly, Garza made a right turn onto West A Street, past a "no trucks through" sign.[15]  Garza then turned left off of West A Street onto South 8th Street in an attempt to access the Whataburger parking lot.[16]  Garza testified

_____

[12]See La Porte Police Department Citation Issued to Everardo Garza ("Citation"), Exhibit D to Plaintiff's Motion, Docket Entry No. 30-4.  Under VIOLATIONS, the Citation states: "(TRUCK) Truck Off Designated Route."

[13]See Garza Deposition, Exhibit C to Plaintiff's Motion, Docket Entry No. 30-3, p. 7 at 26-28; p. 8 at 29; Map of Route from Terminal to Whataburger, Exhibit K to Plaintiff's Motion, Docket Entry No. 30-11; Garza Deposition Exhibits 2 and 3, Exhibit A to Defendant's Motion, Docket Entry No. 31-3, pp. 63, 64 (maps of Garza's route).

[14]See Garza Deposition, Exhibit C to Plaintiff's Motion, Docket Entry No. 30-3, p. 7 at 26-28.

[15]See id. p. 7 at 27; p. 8 at 29-30.  The feeder road of Highway 146 is called South 9th Street at this location.

[16]See Garza Deposition, Exhibit C to Plaintiff's Motion, Docket Entry No. 30-3, p. 8 at 29-32; see also Garza Deposition, attached to Bickley Affidavit, Exhibit A to Defendant's Motion, Docket Entry No. 31-3, p. 64.  It is unclear from the maps and Garza's testimony whether he actually turned on S. 8th Street or went directly into the parking lot, but the distinction is immaterial.  Garza provided a transcription of the video taken of the traffic stop from Officer Boles' car.  La Porte challenges this document as inadmissible hearsay.  See Defendant's Objections to Plaintiff's Summary Judgment Evidence, Appendix A to Defendant City of La Porte, Texas'
(continued...)

that he wanted to enter through the back entrance to the lot, rather than continuing along the feeder to Highway 146 and turning right into the lot from the feeder.[17]   He believed it would be easier to maneuver the tractor back out of the parking lot from that direction.[18]

When Garza was exiting from Highway 146, he passed Officer Boles, who was parked on the shoulder of the exit ramp.[19]   Officer Boles cited Garza for driving off the designated truck route.[20] Garza was not cited for a parking violation.[21]   The Citation against Garza is pending in La Porte municipal court.[22]

La Porte's ordinance governing "traffic and vehicles," Sections 70-212, 70-232, 70-233, 70-235, and 70-237, as amended by

_____

[16](...continued)
Response to Plaintiff's Motion for Summary Judgment and Objections to Plaintiff's Summary Judgment Evidence ("Defendant's Response"), Docket Entry No. 33-1, p. 2.   The court need not rely on this transcript, as the portions of Garza's deposition testimony submitted by both parties describe the stop and citation sufficiently for purposes of summary judgment.

[17]See Garza Deposition, Exhibit C to Plaintiff's Motion, Docket Entry No. 30-3, p. 8 at 30-31.

[18]See id.

[19]See id. p. 8 at 31-32.

[20]See id. p. 6 at 24; Garza Deposition, attached to Bickley Affidavit, Exhibit A to Defendant's Motion, Docket Entry No. 31-3, p. 62; Citation, Exhibit D to Plaintiff's Motion, Docket Entry No. 30-4.

[21]See Citation, Exhibit D to Plaintiff's Motion, Docket Entry No. 30-4.

[22]See Garza Deposition, Exhibit C to Plaintiff's Motion, Docket Entry No. 30-3, p. 7 at 26.

the city council in May of 2015, is at issue in this case.[23]   The
Ordinance regulates various activities, but at issue here are its
applications to commercial truck routes and parking.[24]   Commercial
truck drivers are allowed to park at limited places in La Porte and
may generally only use the designated truck routes to access
destinations in the city limits.[25]   Available truck stops include
the Lion King Travel Plaza, La Porte Travel Center, and Moody
Travel Plaza.[26]   Each of these locations has a convenience store and
fuel, and one has a hotel.[27]   Dining options include Café La Porte,

_____

[23]See La Porte, Texas, Code of Ordinances ("Original
Ordinance"), Appendix I to Plaintiff's Response to Defendant's
Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry
No. 35-1; Amended Ordinance, Appendix A to Plaintiff's Motion,
Docket Entry No. 30-14.   Alexander Affidavit, Exhibit B to
Defendant's Motion, Docket Entry No. 31-4, pp. 2-3 ¶ 4 (discussing
the review and amendment of the Original Ordinance).

[24]The Complaint only mentions § 70-179 of the Original
Ordinance.   See Docket Entry No. 1, pp. 2, 3, 4, 5.   Plaintiff's
Motion challenges §§ 70-212, 70-232, 70-233, 70-235, and 70-237 of
the Amended Ordinance.   Since the ordinance was amended after the
Complaint was filed and La Porte does not object to the expanded
challenge, the court will consider Garza's challenge to the
relevant sections of the Amended Ordinance.

[25]See Amended Ordinance §§ 70-212, 70-232, 70-233, 70-235, and
70-237, Appendix A to Plaintiff's Motion, Docket Entry No. 30-14.

[26]See Garza Deposition, Exhibit C to Plaintiff's Motion, Docket
Entry No. 30-3, pp. 11-12; Map of La Porte with truck stops marked,
Garza Deposition Exhibit 6, Exhibit A to Defendant's Motion, Docket
Entry No. 31-3, p. 73.

[27]See Garza Deposition, Exhibit C to Plaintiff's Motion, Docket
Entry No. 30-3, pp. 11-12.   Oral Deposition of Corby Alexander
("Alexander Deposition"), Exhibit H to Plaintiff's Motion, Docket
Entry No. 30-8, pp. 22-23; Alexander Affidavit, Exhibit B to
Defendant's Motion, Docket Entry No. 31-4, p. 4 ¶ 6.

a Subway, a Chester's Chicken, a Taqueria, and the Port Café.[28]
There is also another hotel available to truck drivers.[29]

Garza filed the action on March 25, 2014.[30] He sought leave
to amend his Complaint after the amendment deadline, but leave was
denied for failure to show good cause for the delay and to allege
facts that would support his new claim.[31] After several time
extensions, both parties filed motions for summary judgment on
June 15, 2015.[32]

_____

[28]See Garza Deposition, Exhibit C to Plaintiff's Motion, Docket
Entry No. 30-3, p. 11-12; see Affidavit of Chief Kenith Adcox
("Adcox Affidavit"), Exhibit C to Defendant's Motion, Docket Entry
No. 31-5, pp. 2-3. See also Affidavits of business owners and
managers, Exhibits E(1)-E(6), Docket Entry Nos. 31-7 through 31-12.

[29]See Alexander Affidavit, Exhibit B to Defendant's Motion,
Docket Entry No. 31-4, p. 4 ¶ 6(c); Oral Deposition of Chief Ken
Adcox ("Adcox Deposition"), Exhibit A to Plaintiff's Motion, Docket
Entry No. 30-1, p. 6 at 23-24. Corby Alexander, the La Porte City
Manager, testified that commercial trucks can park along the side
of the road on Fairmont Parkway without violating the Ordinance and
access a Jack in the Box, taco stand, Popeye's, and a Waffle House
within walking distance. See Alexander Deposition, Exhibit H to
Plaintiff's Motion, Docket Entry No. 30-8, pp. 17; 36-38. He
testified that the Ordinance does not prohibit trucks parking along
the shoulder of designated truck routes to access restaurants. See
id.

[30]Complaint, Docket Entry No. 1.

[31]See Plaintiff's Motion for Leave to File Amended Pleading,
Docket Entry No. 15. Garza sought leave to include "additional
allegations" regarding the Ordinance's validity. Id. at 1 ¶ 4.
"Specifically, that the Ordinance infringes upon Mr. Garza's
fundamental right to travel, and the Privilege and Immunities
clause of the 14th Amendment." Id. See also Order (denying
Plaintiff's Motion for Leave to File Amended Pleading), Docket
Entry No. 21.

[32]See Order Granting Agreed Motion for Continuance, Docket
Entry No. 24; Agreed Order Extending Dispositive Motion Deadline,
Docket Entry No. 27; Agreed Order Extending Dispositive Motion
Deadline, Docket Entry No. 29.

## II.  Cross-Motions for Summary Judgment

### A.  Standard of Review

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).  The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S. Ct. at 2553).  "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."  Id.  If, however, the moving party meets this burden, "the nonmovant must go beyond the pleadings" and produce evidence of specific facts demonstrating that there is a genuine issue for trial.  Id. (citing Celotex, 106 S. Ct. at 2553-54).  The nonmovant "must do more than simply show that there

-8-

is some metaphysical doubt as to the material facts." <u>Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 106 S. Ct. 1348, 1356 (1986).

"In order to avoid summary judgment, the nonmovant must identify specific facts within the record that demonstrate the existence of a genuine issue of material fact." <u>CQ, Inc. v. TXU Mining Co., L.P.</u>, 565 F.3d 268, 273 (5th Cir. 2009). "The party must also articulate the precise manner in which the submitted or identified evidence supports his or her claim." <u>Id.</u> (internal quotation marks and citation omitted). "[P]leadings are not summary judgment evidence." <u>Wallace v. Texas Tech Univ.</u>, 80 F.3d 1042, 1047 (5th Cir. 1996).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 120 S. Ct. 2097, 2110 (2000). The court resolves factual controversies in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075. If the movant bears the burden of proof on an issue at trial, "that party must support its motion [for summary judgment] with credible evidence that would entitle it to a directed verdict if not controverted at trial." <u>McKee v. CBF Corp.</u>, 299 F. App'x 426, 428 (5th Cir. 2008) (citing <u>Celotex</u>, 477 U.S. at 331).

**B.   Analysis**

(1)   <u>Which Claims Are Properly Before the Court</u>

La Porte challenges Garza's Motion for Summary Judgment because it contains claims not alleged in the Complaint.[33]  Garza responds that he has complied with the pleading requirements of Federal Rule of Civil Procedure 8(a), which does not "require a plaintiff to set forth all laws which defendant may be violating."[34] The live pleading before the court, Plaintiff's Original Complaint, alleges that the Original Ordinance "is invalid because [sic] unreasonably restricts access to food, rest, or repairs and is thus preempted by 23 C.F.R. 658.19(a)."[35]  Under "RELIEF REQUESTED" the Complaint states:

> 24.  Plaintiff requests this court declare that La Porte Ordinances, Article V, Subpart A - General Ordinances, Chapter 70 - Traffic and Vehicles, § 70-179 is invalid because it is preempted by federal law.

> 25.  Plaintiff further requests this court enjoin the City of La Porte or agents acting on behalf of the City of La Porte from enforcing this ordinance.[36]

---

[33]<u>See</u> Defendant's Response, Docket Entry No. 33, pp. 1, 11, 13; Defendant City of La Porte, Texas' Sur-Reply to Plaintiff's Motion for Summary Judgment, Docket Entry No. 37, pp. 1-6.

[34]Plaintiff's Reply to La Porte's Response to Plaintiff's Motion for Summary Judgment ("Plaintiff's Reply"), Docket Entry No. 34, p. 6.

[35]<u>See</u> Complaint, Docket Entry No. 1, p. 4 ¶ 22.

[36]<u>Id.</u> ¶¶ 24-25.  Even Garza's proposed First Amended Complaint did not contain the claims that he advances in his Motion for Summary Judgment.  <u>See</u> <u>supra</u> note 31.  <u>See</u> <u>also</u> Exhibit A to Plaintiff's Motion for Leave to File Amended Pleading, Docket Entry No. 15-1.

Although Garza's Complaint does not allege any state law claims, his Motion for Summary Judgment argues that "The State of Texas expressly prohibits cities from regulating parking on private nonresidential property" and "La Porte has exceeded its authority" under Texas law to regulate "stopping, standing, and parking."[37]

Even under the "liberal pleading standard" of Federal Rule of Civil Procedure 8(a), a party cannot use a motion for summary judgment to raise new claims. See U.S. ex rel DeKort v. Integrated Coast Guard Systems, 475 F. App'x 521, 522 (5th Cir. 2012) ("[T]he Supreme Court has mandated a liberal pleading standard for civil complaints . . . .  This standard however does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage. . . .  At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." (quoting Gilmore v. Gates, McDonald and Co., 382 F.3d 1312, 1314-15 (11th Cir. 2004))); In re Idearc, Inc., No. 09-31828-BJH-11, 2011 WL 203859, at *14 (Bankr. N.D. Tex. Jan. 21, 2011) ("However, 'there is a crucial difference in timing when the sufficiency of a complaint arises at the summary judgment stage after a plaintiff has had an opportunity for discovery.'" (quoting Carter v. Ford

---

[37]See Plaintiff's Motion, Docket Entry No. 30, pp. 8-9. See also Plaintiff's Reply, Docket Entry No. 34, pp. 1-5.

<u>Motor Co.</u>, 561 F.3d 562, 567 (6th Cir. 2009))).  Garza's state law

claims are therefore not before the court.[38]

> (2)   <u>Whether Summary Judgment is Appropriate For Either Party</u>
> <u>On the Remaining Federal Preemption Claim</u>

Garza claims that La Porte's Ordinance is preempted by 23

C.F.R. § 658.19 because it "unreasonably restricted Mr. Garza's

rights to reasonable access to facilities for food, fuel, rest, and

repairs."[39]  23 C.F.R. Part 658 was promulgated by the FHWA pursuant

to its authority under the STAA[40] to "identify a National Network

[NN] of highways available to vehicles authorized by provisions of

the [STAA] as amended, and to prescribe national policies that

---

[38]Garza refers to another statute, 23 U.S.C. § 127(b), in Plaintiff's Response, Docket Entry No. 35, pp. 3-4.  He did not refer to this statute in the Complaint, Docket Entry No. 1, or Plaintiff's Motion for Summary Judgment, Docket Entry No. 30.  "A claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court."  <u>Cutrera v. Bd. of Supervisors of Louisiana State Univ.</u>, 429 F.3d 108, 113 (5th Cir. 2005); <u>see also</u> <u>Fisher v. Metropolitan Life Ins. Co.</u>, 895 F.2d 1073, 1078 (5th Cir. 1990).

[39]<u>See</u> Plaintiff's Motion, Docket Entry No. 30, p. 2; Complaint, Docket Entry No. 1, p. 4 ¶ 22.

[40]The STAA was enacted in 1983 and is now codified at 49 U.S.C. § 31101 <u>et seq.</u>  <u>See</u> Surface Transportation Assistance Act of 1982, Pub. L. No. 97-424, 96 Stat. 2097 (1983); <u>New Hampshire Motor Transport Association v. Town of Plaistow</u>, 67 F.3d 326, 328 (1st Cir. 1995).  The STAA has been amended multiple times, including by the Tandem Truck Safety Act of 1984.  <u>See</u> <u>Town of Plaistow</u>, 67 F.3d at 329.  49 U.S.C. § 31114 is the STAA's statutory "reasonable access" section.

govern truck and bus size and weight." <u>See</u> 23 C.F.R. § 658.1.[41]

23 C.F.R. § 658.19, "Reasonable access," states in relevant part:

> (a) No State may enact or enforce any law denying reasonable access to vehicles with dimensions authorized by the STAA between the NN and terminals and facilities for food, fuel, repairs, and rest. . . .
>
>                          . . .
>
> (d) No State may enact or enforce any law denying access within 1 road-mile from the National Network using the most reasonable and practicable route available except for specific safety reasons on individual routes.

Garza argues that the FHWA has advised that restrictions on access must be based on either safety or engineering considerations, and La Porte's Ordinance is not based on these specific considerations.[42] La Porte argues that (1) a justiciable controversy no longer exists in light of the substantial amendments to the Ordinance; (2) Garza was not operating an STAA-regulated vehicle when he received the Citation; and (3) both the Original

_____

[41]<u>See</u> <u>also</u> 23 C.F.R. § 658.5 Definitions: the National Network is "[t]he composite of the individual network of highways from each State on which vehicles authorized by the provisions of the STAA are allowed to operate. The network in each State includes the Interstate System, exclusive of those portions excepted under § 658.11(f) or deleted under § 658.11(d), and those portions of the Federal-aid Primary System in existence on June 1, 1991, set out by the FHWA in appendix A to this part."

[42]Plaintiff's Motion, Docket Entry No. 30, p. 2 (citing U.S. Dep't of Transportation, Federal Highway Administration, Freight Management and Operations - Questions and Answers about Vehicle Size and Weight, 23 CFR 658.19 Reasonable Access ("FHWA - 23 CFR 658.19 Reasonable Access Q&A"), Appendix B to Plaintiff's Motion, Docket Entry No. 30-15, p. 2. The same document is attached as Appendix A to Defendant's Motion, Docket Entry No. 31-1.).

Ordinance and the Amended Ordinance provide the "reasonable access" required by the STAA.[43]

    a.   Standing

Garza argues that he has standing to challenge the "truck route and parking ordinances."[44] Standing requires: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) likelihood that a favorable decision will redress the injury. Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136 (1992). Garza was cited for "truck off designated route."[45] The proceeding against him in La Porte Municipal Court is directly traceable to the "designated truck route" portion of the Ordinance, and a favorable decision by the court invalidating

---

[43]Defendant's Motion, Docket Entry No. 31, pp. 1-2. La Porte also argues that under Younger v. Harris, 91 S. Ct. 746 (1971), the court should abstain from hearing this dispute because Garza could raise his preemption claims as a defense in the pending municipal court action based on his Citation. Defendant's Motion, Docket Entry No. 31, p. 2. Abstention is appropriate in three classes of exceptional cases: state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions. Sprint Communications, Inc. v. Jacobs, 134 S. Ct. 584, 588 (2013). Although the proceeding against Garza in La Porte municipal court is pending, this is not an "exceptional" case, and the court declines to abstain. See id. (noting the general rule that "[t]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction") (quotations omitted).

[44]Plaintiff's Motion, Docket Entry No. 30, p. 3.

[45]See Citation, Exhibit D to Plaintiff's Motion, Docket Entry No. 30-4.

the Ordinance would redress his injury.   Garza therefore has standing to contest the "designated truck route" portion of the Ordinance.

The truck route limitations and the parking limitations are interrelated parts of the Amended Ordinance.   Officer Boles told Garza that he could not park in the Whataburger parking lot.[46] Garza was therefore not able to eat at the Whataburger because of the parking portion of the Ordinance.   City Manager Corby Alexander testified that no La Porte business has ever applied for approval of a parking plan to his knowledge.[47]   There is no evidence that under the Amended Ordinance Garza can now park his tractor at Whataburger in order to get food, or that Garza would not have received the Citation under the Amended Ordinance.[48]   See City of Houston, Texas v. Hill, 107 S. Ct. 2502, 2508 n.7 (1987) (plaintiff's showing of "'a genuine threat of enforcement' of the ordinance against his future activities" was sufficient to confer standing to challenge the facial validity of the ordinance).   Since

_____

[46]See Garza Deposition, Exhibit C to Plaintiff's Motion, Docket Entry No. 30-3, p. 9 at 35.

[47]See Alexander Deposition, Exhibit H to Plaintiff's Motion, Docket Entry No. 30-8, p. 7 at 26-27.   Amended Ordinance § 70-237 "Parking Plan for Accommodation of Commercial Motor Vehicles," Appendix A to Plaintiff's Motion, Docket Entry No. 30-14.

[48]See Adcox Affidavit, Exhibit C to Defendant's Motion, Docket Entry No. 31-5, pp. 2-3 (indicating that truck drivers have access to "at least" the same five restaurants under the Original Ordinance and the Amended Ordinance); Alexander Affidavit, Exhibit B to Defendant's Motion, Docket Entry No. 31-4, pp. 3-4.

Garza continues to drive his commercial motor vehicle in La Porte, there is a threat of future enforcement should he drive or park in locations forbidden by the Amended Ordinance. Garza therefore also has standing to challenge the parking portions of the Amended Ordinance. See Pennell v. City of San Jose, 108 S. Ct. 849, 855 (1988) ("The likelihood of enforcement, with the concomitant probability that a landlord's rent will be reduced below what he or she would otherwise be able to obtain in the absence of the Ordinance, is a sufficient threat of actual injury to satisfy Art. III's requirement that '[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.'").

Garza also challenges Section 70-235 of the Amended Ordinance, which designates hazardous material routes.[49] There is no evidence that Garza has ever driven or will drive a "placarded" (hazardous) load through La Porte, much less been denied access to food, fuel, rest, or repairs because of driving such a load. Garza therefore lacks standing to challenge this section of the Amended Ordinance.

   b.   The 2015 Amended Ordinance

Four sections of the Amended Ordinance are at issue. Section 70-212 imposes a fine on persons who fail to comply with the provisions of this article. Section 70-232 of the Amended Ordinance, "Use required generally," states:

---

[49]See Plaintiff's Motion, Docket Entry No. 30, pp. 13-14.

-16-

No person shall operate a commercial motor vehicle upon any roads, avenues, streets or thoroughfares within the corporate limits of the city except on those which are designated as truck routes in Section 70-231 of this Code, and subject to the gross weight limits established by Division 3 of this article.

Section 70-233, "Exception to Section 70-232: point of origin; parking of commercial motor vehicles," states:

(a)   The provisions of Section 70-232 of this Code notwithstanding, in those instances where any commercial motor vehicles originating within the corporate limits of the city, shall have as its point of origin a point located off a designated truck route, it shall proceed to the nearest point on a designated truck route by the most direct route possible.  If such commercial motor vehicles shall originate outside the corporate limits of the city and enter the city at a point which is not on a designated truck route, it shall proceed to the nearest point on a designated truck route by the most direct route possible.

(b)   In those cases where commercial motor vehicles originate off a designated truck route, whether inside or outside the corporate limits of the city, and the destination of the commercial motor vehicle is nearer the origin or point of entering the corporate limits of the city than is the nearest point on a designated truck route by the most direct route possible, it shall not be necessary to proceed to the nearest designated truck route.

(c)   Commercial motor vehicles not in combination with a trailer . . . may travel to and park at locations off a designated truck route by taking the most direct route possible, regardless of whether the operator of the commercial motor vehicle is loading or unloading cargo, providing services, or seeking repairs at a legitimate repair facility, provided that the location is not in a residentially zoned area and is at a site physically capable of accommodating customer commercial motor vehicle parking by means of a parking facility striping plan 1) configured to allow for the safe parking of commercial motor vehicles, and 2) approved by the Planning Department of the City in accordance with the requirements of Section 70-237 of this Chapter.

-17-

(d) Combination commercial motor vehicles . . . may
travel to and park at locations contiguous to and
fronting a designated truck route, regardless of whether
the operator of the commercial motor vehicle is loading
or unloading cargo, or seeking repairs at a legitimate
repair facility, provided that the location is at a site
physically capable of accommodating customer commercial
motor vehicle parking specific to commercial motor
vehicles in combination with a trailer, by means of a
parking striping plan 1) configured to allow for the safe
parking of combination commercial motor vehicles, and
2) approved by the Planning Department of the City in
accordance with the requirements of Section 70-237 of
this Chapter.

Section 70-237 allows businesses to create a "Parking Plan for

Accommodation of Commercial Motor Vehicles:"

The owner or operator of any existing or proposed
site in which parking is sought for accommodation of
customer commercial motor vehicles, including combination
commercial motor vehicles, where the site is physically
capable of safely accommodating such vehicles, shall be
required to submit to the Planning Department for approval
a parking facility striping plan as a component of a
proposed site plan, or as an amending document to a
previously approved (if one exists) site plan. The
applicant for the site plan or amended site plan shall be
allowed the option of striping up to 15% of the required
automobile parking as dual use parking spots for the
accommodation of commercial motor vehicle parking, and
shall be so striped and labeled. Such allocation shall
generally be located within the parking spaces least used.

La Porte argues that the Amended Ordinance contains

substantial changes that make Garza's claim moot.[50]   The city

council appointed a committee to conduct a comprehensive review of

the Original Ordinance and retained Nichols and Freese, a

---

[50]<u>See</u> Defendant's Motion, Docket Entry No. 31, pp. 2, 4, 6 ¶ e,
8-9; Defendant's Response, Docket Entry No. 33, p. 2 ¶¶ f, g.

consulting firm, to assist the committee.[51]   However, La Porte has not provided any evidence that the amendments have materially changed Garza's situation; his Citation is still pending and he has limited access to businesses in La Porte while driving his truck.[52] Even when driving only the truck tractor Garza cannot park at Whataburger or many other restaurants in La Porte.   See Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, Florida, 113 S. Ct. 2297, 2300-01 (1993) (holding that respondents' claims were not moot even though the original ordinance had been repealed and replaced because "[t]he new ordinance may disadvantage them to a lesser degree than the old one . . . [but] it disadvantages them in the same fundamental way").   Garza's claim, therefore, is not moot.

### c.   Federal Preemption

#### i.   The STAA's Applicability

23 C.F.R. § 658.19(a) prohibits states from denying reasonable access to "vehicles with dimensions authorized by the STAA between the [National Network] and terminals and facilities for food, fuel,

---

[51]See Alexander Affidavit, Exhibit B to Defendant's Motion, Docket Entry No. 31-4, pp. 2-4 ¶¶ 4, 5.   Affidavit of Timothy Tietjens ("Tietjens Affidavit"), Exhibit D to Defendant's Motion, Docket Entry No. 31-6, pp. 1-2.

[52]Compare Alexander Deposition, Exhibit H to Plaintiff's Motion, Docket Entry No. 30-8, pp. 7-8 at 25-29 (describing the process for a business to obtain city approval to accommodate parking for commercial motor vehicles under the Original Ordinance) with Amended Ordinance § 70-237, Appendix A to Plaintiff's Motion, Docket Entry No. 30-14, p. 8.

repairs, and rest." La Porte argues that this provision does not apply because Garza's truck tractor is not an STAA-regulated vehicle under the FHWA interpretation and "is not otherwise a 'commercial motor vehicle' as defined therein."[53] The Q&A page cited by La Porte states that a "truck tractor is not an STAA vehicle."[54] However, that statement is made in the context of clarifying that states are not required to allow drivers to park their truck tractors at their homes.[55]

The STAA statutory definition of "commercial motor vehicle" is "a self-propelled or towed vehicle used on the highways in commerce principally to transport passengers or cargo, if the vehicle – (A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater." 49 U.S.C. § 31101(1)(A).[56] "Gross vehicle weight rating" is defined by the Department of Transportation regulations as "the value specified by the manufacturer as the loaded weight of a single motor vehicle."

---

[53]Defendant's Motion, Docket Entry No. 31, pp. 7-8.

[54]See FHWA - 23 CFR 658.19 Reasonable Access Q&A, Appendix B to Plaintiff's Motion, Docket Entry No. 30-15 and Appendix A to Defendant's Motion, Docket Entry No. 31-1.

[55]See FHWA - 23 CFR 658.19 Reasonable Access Q&A, Appendix A to Defendant's Motion, Docket Entry No. 31-1.

[56]See Montgomery v. Administrative Review Board, 348 F. App'x 915, 916 n.2 (5th Cir. 2009) (noting that the STAA is codified at 49 U.S.C. §§ 31101-31107). Provisions of the STAA were formerly found at 49 App. U.S.C.A. §§ 2301-2316. See Hollan v. Cuyahoga County Court of Common Pleas, No. 1:13-CV-1857, 2014 WL 255727, at *2 (N.D. Ohio 2014) (describing it as currently codified at 49 U.S.C. §§ 31101-31115).

See <u>Albanil v. Coast 2 Coast, Inc.</u>, 444 F. App'x 788, 796 (5th Cir. 2011) (citing 49 C.F.R. § 390.5).  As the party moving for summary judgment, La Porte has the burden of establishing that Garza's tractor is not an STAA regulated vehicle.  Since La Porte has offered no summary judgment evidence on this issue, the court will not grant summary judgment based on this argument.

### ii.  Reasonable Access

Garza argues that under the "reasonable access provisions" (which he defines as 23 C.F.R. § 658.19(a)), he is guaranteed the right to eat, sleep, refuel, and seek repairs in La Porte.[57]  He also cites 23 C.F.R. § 658.19(d), which prohibits states from enacting or enforcing any law "denying access within 1 road-mile from the National Network using the most reasonable and practicable route available except for specific safety reasons on individual routes."[58]  Garza seeks summary judgment because "La Porte has no evidence that its ordinances restricting a professional driver's access to food, fuel, rest, and repairs is based on safety or engineering considerations."[59]

---

[57]<u>See</u> Plaintiff's Motion, Docket Entry No. 30, p. 10.

[58]<u>See</u> <u>id.</u> (citing 23 C.F.R. § 658.19(d)).

[59]<u>See</u> <u>id.</u> at 6 ¶ 3; 10-12.  Garza also frames the Ordinance as "segregation" and "discrimination," citing <u>Brown v. Board of Education</u>, 347 U.S. 483 (1954), and arguing that "separate but equal" is no longer tolerated.  <u>Id.</u> at 18-20.  The court will not seriously consider this extreme rhetoric.

La Porte argues that the Amended Ordinance provides commercial truck drivers with reasonable access, that access restrictions are not limited to safety and engineering considerations, and that the Amended Ordinance's restrictions are safety-based.[60]   Rather than reasonable access, La Porte argues that Garza is seeking access to a restaurant of his preference, a burden not imposed by the STAA.[61]

> (A)   <u>Does the STAA require that the city base restrictions on access on safety or engineering concerns?</u>

Garza cites three cases[62] to support his contention that access may only be denied on the basis of safety or engineering considerations.  In <u>New York State Motor Truck Association, Inc. v. City of New York</u>, 654 F. Supp. 1521, 1539 (S.D.N.Y. 1987), the court held that "States may not impose unreasonable restrictions pursuant to § 412(b) [of the STAA], nor may they impose restrictions that are not based on safety considerations, nor may they impose restrictions that interfere with tandem operators' rights to reasonable access to the facilities in question."   In <u>Consolidated Freightways Corp. of Delaware v. Larson</u>, 647 F. Supp. 1479, 1492 (M.D. Penn. 1986), <u>reversed on other grounds</u>, 827 F.2d

---

[60]<u>See</u> Defendant's Response, Docket Entry No. 33, pp. 3, 8; Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment ("Defendant's Reply"), Docket Entry No. 36, p. 3.

[61]<u>See</u> Defendant's Response, Docket Entry No. 33, p. 2.

[62]He also cites the FHWA - 23 CFR 658.19 Reasonable Access, Appendix B to Plaintiff's Motion, Docket Entry No. 30-15, discussed <u>supra</u>.

-22-

916 (3d. Cir. 1987), the court held that "a denial of an access route must be for safety reasons and must be related to a safety or operating characteristic of the STAA vehicle in relation to the proposed route.   Otherwise, the denial amounts to a denial of reasonable access in contravention of the federal statute." Finally, in A.B.F. Freight System, Inc. v. Suthard, 681 F. Supp. 334, 340-41 (E.D. Va. 1988), the court held that "in order to be valid and to survive under the federal statute, any state law restricting the local access of single pup trailers must satisfy these criteria:   (1) the law may impose only reasonable restrictions, and the resulting access allowed must be reasonable access in fact; and (2) the state restrictions must be based solely on valid considerations of safety and not on any other, extraneous factors."   For the reasons explained below, the court finds these cases unpersuasive in light of the statutory language and other authority.   Also, as will be explained further in the next section, the state ordinances in these cases are distinguishable from La Porte's Amended Ordinance.

La Porte argues that by declining to define "reasonable access," Congress recognized that the requisite degree of access will vary and that a state has power to validly regulate access for reasons other than safety.[63]   La Porte relies on two cases, Town of Plaistow, 67 F.3d at 326, and Aux Sable Liquid Products v. Murphy,

---

[63]See Defendant's Motion, Docket Entry No. 31, pp. 9-10.

526 F.3d 1028 (7th Cir. 2008), where the courts were less limiting in their interpretation of the STAA's prohibition on denial of access. Both of these cases post-date and discuss the three district court cases Garza relies on.

In Town of Plaistow, 67 F.3d at 327, the town limited night-time access to and from a local trucking terminal. The district court held that the STAA did not preempt the town's injunction, citing 49 U.S.C. § 31114 (the STAA's reasonable access provision). Id. at 328-31. On appeal the truckers argued that state restrictions on "reasonable access" must be based on safety. Id. at 329. In affirming the district court, the First Circuit discussed the history of the STAA and its amendments and acknowledged the three district court cases that Garza relies on, but concluded that "[s]afety is obviously a paramount reason for limiting access; but, in our view, it is not the only reason permitted by Congress." Id. at 329-31. The review is a fact-specific one. See id. at 331.

The Seventh Circuit later adopted the First Circuit's reasoning. See Aux Sable, 526 F.3d at 1036 n.4. The case considered "to what degree" the STAA preempts local weight restrictions on local roads bordering the National Network. See id. at 1030. There were two routes from plaintiff Aux Sable Liquid Products' propane loading terminal to the Interstate. Id. at 1031. One route could be used by unloaded trucks, and the other, slightly

longer route could be used by trucks weighing up to 80,000 pounds.[64]
In 2005 the new highway commissioner informed Aux Sable that he
intended to restrict truck traffic on Ridgeland Avenue, the second
route, due to damage caused by the heavy trucks.  Id. at 1031–32.
Aux Sable sued, alleging that the STAA preempted the new weight
restrictions.  Id. at 1032.  The district court agreed in its
ruling on cross-motions for summary judgment.  Id.

On appeal Aux Sable Liquid Products, like Garza, argued that
states' regulatory authority was limited "in that states are
mandated to provide reasonable access, and that any exercise of
state authority must be done 'reasonably and in the interest of
public safety.'"  Id. at 1034 (quoting Larson, 647 F. Supp. at
1484).  The township argued that by declining to define "reasonable
access" more specifically when it amended the STAA in 1984, despite
awareness of the lack of uniformity from state to state with
respect to the degree of access provided to the National Network,
Congress intended that states be permitted to define "reasonable
access" "on their own."  Id. at 1035.

The Seventh Circuit held that "Congress's primary objective in
passing the STAA was to create uniform standards for commercial
motor vehicles utilizing the Interstate and other federal
highways. . . .  Thus, § 31114 prohibits states from denying

_____

[64]This is the maximum vehicle gross weight permitted on the
Interstate System under 23 C.F.R. § 658.17(b).  Id. at 1031.

commercial motor vehicles 'reasonable access' to and from the Interstate."[65]   Id. at 1036.   However, Congress's decision not to define "reasonable access" more specifically recognizes that the "manner and degree of access to and from the Interstate necessary to protect Congress's overarching goal of uniformity for commercial motor vehicles utilizing the Interstate will vary across the county depending on factors such as whether the Interstate is cutting across rural or metro areas, traffic density on the road, and other considerations. . . . Under this framework, states are still free to exercise their police powers over state highways and local roads, so long as these regulations do not impede 'reasonable access' for commercial motor vehicles traveling between the Interstate and places such as terminals."[66]   Id.

In a footnote the court also discussed the one road-mile provision in 23 C.F.R. § 658.19(d):

> As discussed by the First Circuit, there is no reason to think that § 31114(b), which provides an exception from the "reasonable access" provision in § 31114(a) for reasonable restrictions on certain truck tractor-

---

[65]The Seventh Circuit affirmed the district court's holding because, as applied, the ordinance denied all access to the National Network (the other potential route was already unavailable to the loaded trucks). Id. at 1037. "[T]he denial of all access cannot constitute reasonable access." Id.

[66]In a footnote, the court acknowledged that some courts have held that safety concerns are the only reason a state or local government could restrict access to and from the National Network. Id. at 1036 n.4. However, the Seventh Circuit rejected that holding and expressly agreed with the First Circuit's analysis of § 31114(a) in Town of Plaistow.

> semitrailer combinations imposed by state or local governments for safety reasons, serves to limit <u>any</u> state restriction to one based on safety considerations. Instead, a more proper reading of § 31114(a) is that states may exercise their police powers for any number of reasons, so long as reasonable access is provided. Although the federal regulations provide an exception in that "access within 1 road-mile from the National Network must us[e] the <u>most reasonable</u> and practicable route available <u>except for specific safety reasons</u> on individual routes," 23 C.F.R. § 658.19(d) (emphasis added), these extra qualifications do not apply beyond the 1 road-mile mark.

<u>Id.</u> at n.4 (internal citations omitted).  The Seventh Circuit recognized that there is an exception when access is denied within 1 road-mile of the National Network "using the most reasonable and practicable route available."  <u>Id.</u>  In that situation states may only deny access for specific safety reasons on individual routes.[67]  <u>Id.</u>

The court reads this less-than-clear body of case law as holding that states cannot arbitrarily deny commercial motor vehicles reasonable access to facilities for food, fuel, rest, and repairs and satisfy the STAA.  Based on the language in the STAA and the "reasonable access" regulation, the court adopts the reasoning of the First and Seventh Circuits.  "'Reasonable' is a comprehensive term and nothing in language or common-sense makes reasonableness turn solely on safety considerations."  <u>Town of Plaistow</u>, 67 F.3d at 329-30 (citations omitted).  The state must be able to justify denial of access as an articulable, reasonable

---

[67]<u>See</u> Defendant's Response, Docket Entry No. 33, p. 3.

exercise of its police powers.  Denial of all access is not "reasonable access," but "reasonable access" may vary based on factors such as whether the Interstate is cutting across rural or metro areas, traffic density on the road, and other considerations. See Aux Sable, at 1036-37.  Specifically, access "using the most reasonable and practicable route available" may only be denied based on "specific safety reasons on individual routes" within one road-mile of the National Network.[68]

> (B)  Does the Amended Ordinance provide reasonable access to facilities for food, fuel, rest, and repairs?

La Porte argues that the Amended Ordinance provides the required reasonable access and that, although not required, its restrictions are based on valid safety concerns.[69]  La Porte characterizes Garza's Complaint as seeking "preferred access" rather than "reasonable access."[70]  In Town of Plaistow, 67 F.3d at 330-31, the First Circuit distinguished the three cases that Garza relies on as follows:  "[T]he state restrictions with which those cases were concerned were wholly different from and far more

---

[68]See also The Mason and Dixon Lines, Inc. v. Steudle, 761 F. Supp. 2d 611, 625 (E.D. Mich. 2011) ("The statute focuses on 'law[s]' and regulations and has been construed to permit states to 'exercise their police powers over state highways and local roads,' over matters beyond just 'safety considerations.'") (citing Aux Sable and Town of Plaistow)).

[69]See Defendant's Reply, Docket Entry No. 36, p. 3.

[70]See id. at 2.

intrusive than the Plaistow ordinance and order, including blanket limitations on the distance vehicles could freely travel off the national network and burdensome prior approval provisions for the use of local roads." This court likewise concludes that the Amended Ordinance is distinguishable from the laws in those cases, briefly discussed <u>supra</u> under the correct analysis.

In the first case, <u>New York Trucking Association</u>, 654 F. Supp. at 1539, the city required a single-use permit, upon application to the commissioner, before certain trucks could use certain routes to access their city destinations. The ordinance also imposed time-of-day restrictions for trucks using certain portions of the National Network within the city. <u>Id.</u> at 1535. Access to facilities for food, fuel, rest, and repairs was restricted to anything within a distance of 750 feet off the designated routes. <u>Id.</u> at 1539. In contrast, La Porte has not imposed a blanket restriction on distances trucks can travel off the National Network. There are no time-of-day restrictions in the challenged sections of the Amended Ordinance. A process is provided for businesses to submit a parking facility striping plan to demonstrate that they can safely accommodate truck parking, and a business must submit a parking plan to the Planning Department only once, as opposed to seeking a single-use permit.

In <u>A.B.F. Freight System, Inc.</u>, 681 F. Supp. at 340, the Virginia statute and regulations allowed 102" wide trailers

("pups") to access points of loading and unloading off the National Network only after approval of an access route, unless the point of loading or unloading was within one-half mile of the National Network. A.B.F. Freight complained that this process was extremely burdensome as "the customer points of loading and unloading vary daily and sometimes more often." Id. at 344. In contrast, La Porte's Amended Ordinance does not restrict access to points of loading or unloading or to truck terminals. Garza can also freely access facilities for food, fuel, rest, and repair within the city without applying for pre-approval, if such facility can safely accommodate commercial motor vehicles.

In Larson, 647 F. Supp. at 1484, Pennsylvania only allowed certain longer commercial vehicles to access facilities for food, fuel, rest, and repair that were two-tenths of a mile from the nearest ramp or intersection leading to a National Network highway, and then only over highways having lanes at least twelve feet wide. Consolidated Freight argued those restrictions were unreasonable "because most highways that intersect with national network highways have lane widths of less than twelve feet, and most facilities are located beyond two-tenths of a mile from the national network highway. Id. at 1488. In concluding this was not reasonable access, the court considered that only 11 out of 137 vendors for maintenance and repair in Pennsylvania were accessible under the statute. Id. at 1490. Only two facilities for food,

-30-

fuel, rest, or repair were available along Interstate 80 on a 300-mile stretch of highway, approximately four hours apart.  Id. at 1490-91.  The court "[took] into consideration availability as a factor in determining reasonableness.  Id.  La Porte, in contrast to the state of Pennsylvania, is only 18.6 square miles total.[71] There are available facilities for food, fuel, rest, and repairs minutes apart and no evidence in the record that Garza has been unable to access any of these while driving through La Porte.[72]  The Amended Ordinance is thus distinguishable from the laws in each of the cases cited by Garza where the courts found STAA preemption.

Citing sections of the depositions of Police Chief Ken Adcox and City Manager Corby Alexander in support, Garza argues that La Porte has no evidence that the Ordinance was ever based on safety or engineering concerns.[73]  While safety and engineering concerns are not the only reason a state might deny access (assuming compliance with the one road-mile route requirement discussed above), the affidavit of the Director of Planning and Development for La Porte states:

---

[71]See Alexander Affidavit, Exhibit B to Defendant's Motion, Docket Entry No. 31-4, p. 2 ¶ 3.

[72]Although La Porte experiences heavy truck traffic daily, Garza has not provided evidence that the truck stops are overwhelmed or that truck drivers have been denied necessary facilities.

[73]See, e.g., Plaintiff's Motion, Docket Entry No. 30, p. 12, citing Adcox Deposition, Exhibit A to Plaintiff's Motion, Docket Entry No. 30-1, p. 7 at 26; Alexander Deposition, Exhibit H to Plaintiff's Motion, Docket Entry No. 30-8, p. 9 at 33-35.  See also Plaintiff's Response, Docket Entry No. 35, p. 5.

Under Ordinance No. 2015-3579, any owner or operator of any existing or proposed site who wants to accommodate on-site commercial motor vehicle ("CMV") parking will be approved to do so without delay once he or she files a scaled striping plan complying with the ordinance with the Planning Department showing that they can physically accommodate such vehicles with safety. The key issue for purposes of approval is safety alone.

This process is not lengthy or cumbersome, does not require a fee to be paid to the City, and does not necessarily require a property owner to hire an engineer or professional to provide the information needed to obtain the City's commercial truck parking approval.

Commercial motor vehicles, including tractor trailer combinations and tractors operating without an attached trailer, are significantly larger and higher than non-commercial automobiles and trucks, and are less maneuverable. For this reason, while the City cannot force private property owners to make their property available for commercial vehicle parking, when private property owners want to do so, the City does have a legitimate public interest in making sure that commercial motor vehicles are parked so that they do not cause a safety hazard for the public, and that such vehicles have enough space to safely maneuver.[74]

The Amended Ordinance also refers to safety: "physically capable of accommodating such vehicles" § 70-237; "site physically capable of accommodating customer commercial motor vehicle parking" § 70-233(c), (d). City Manager Corby Alexander noted "the truck traffic emanating from [the Port of Houston high-capacity] terminals is dense and, therefore, presents both tremendous commercial opportunities and serious public safety, quality of life, safety, road maintenance, pollution, and other infrastructure concerns for

---

[74]Tietjens Affidavit, Exhibit D to Defendant's Motion, Docket Entry No. 31-6, pp. 1-2 ¶ 3. See also note 93, supra.

City officials."[75]   Garza acknowledged the difficulties in maneuvering just his tractor in a parking lot like Whataburger's: "As my perspective, since I sit a little higher in my truck, it was a lot easier to come in the back way.  There was a few cars, a lot of cars parked in the front.  It would have been a lot easier to come in the back way and easier to exit the front, instead of making a U-turn inside the parking lot and getting out the front."[76]

The STAA "reflects a congressional interest in establishing uniform regulations governing the size, weight, and arrangements of trucks used in interstate commerce."  United States v. State of Connecticut, 566 F. Supp. 571, 576 (D. Conn. 1983), aff'd, 742 F.2d 1443 (2d Cir. 1983), aff'd sub nom., Connecticut v. United States, 104 S. Ct. 1263 (Mem) (1984) (holding that Congress acted within its authority under the Commerce Clause when enacting the STAA). Under the Amended Ordinance, commercial motor vehicles are permitted to leave the designated truck routes to load or unload cargo, provide services, or seek repairs.[77]   La Porte does not

---

[75]See Alexander Affidavit, Exhibit B to Defendant's Motion, Docket Entry No. 31-4, p. 2 ¶ 3.

[76]See Garza Deposition, Exhibit C to Plaintiff's Motion, Docket Entry No. 30-3, p. 8 at 30-31.  Garza does not challenge the truck routes themselves, or argue that the residentially zoned streets he drove on before receiving his Citation should be designated truck routes.

[77]See Amended Ordinance § 70-234, Appendix A to Plaintiff's Motion, Docket Entry No. 30-14, p. 7.

restrict access to any truck terminals.[78]  Truck tractors may travel

to and park at any location off the designated truck routes taking

the most direct route possible, as long as the location is not

zoned as residential and has been demonstrated to be physically

capable of safely accommodating commercial motor vehicle parking.[79]

Combination commercial motor vehicles not transporting a hazardous

load can travel to and park at locations contiguous to and fronting

the designated truck routes, as long as the site has been

demonstrated to be physically capable of safely accommodating such

parking.[80]  Not every hotel or restaurant within 1 road-mile of the

National Network roads is truck-accessible, but there are multiple

facilities for food, fuel, rest, and repair that these vehicles can

safely access while not traveling on residential streets.   The

---

[78]See generally Alexander Affidavit, Exhibit B to Defendant's Motion, Docket Entry No. 31-4; Amended Ordinance, Appendix A to Plaintiff's Motion, Docket Entry No. 30-14.

[79]See Amended Ordinance §§ 70-233(c), 70-234, Appendix A to Plaintiff's Motion, Docket Entry No. 30-14, p. 6.   See also Alexander Affidavit, Exhibit B to Defendant's Motion, Docket Entry No. 31-4, pp. 3-4 ¶¶ 5-6; Tietjens Affidavit, Exhibit D to Defendant's Motion, Docket Entry No. 31-6, pp. 1-2 ¶¶ 2-3.

[80]See Amended Ordinance §§ 7-233(d), 70-234, Appendix A to Plaintiff's Motion, Docket Entry No. 30-14, p. 6.   The Amended Ordinance limits the number and location of commercial motor vehicle accessible spots a business can create, but nothing in the STAA or regulations indicate that a city must allow commercial motor vehicles to park in every spot at every facility or deny reasonable access.   The qualifier of "reasonable" indicates that the state can impose reasonable limitations, as discussed at length supra.

Amended Ordinance does not "require a permit" or impose a "blanket restriction" on access, as Garza asserts.[81]

The STAA does not require cities like La Porte to grant unfettered access to commercial motor vehicles to any restaurant, gas station, or hotel within the city. La Porte has a legitimate interest in protecting the interests of its citizens and its infrastructure. La Porte's Amended Ordinance satisfies the STAA's requirement that commercial motor vehicles have reasonable access to facilities for food, fuel, rest, and repairs.

### III.  Conclusions and Order

Because the summary judgment evidence shows that there is no genuine issue of material fact regarding reasonable access under La Porte's Amended Ordinance, which is the only claim properly before the court, summary judgment for La Porte is appropriate. Plaintiff's Motion for Final Summary Judgment (Docket Entry No. 30) is therefore **DENIED,** and Defendant City of La Porte, Texas' Motion for Summary Judgment (Docket Entry No. 31) is **GRANTED.**

**SIGNED** at Houston, Texas, on this 4th day of February, 2016.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[81]See Plaintiff's Motion, Docket Entry No. 30, p. 7 ¶¶ 6-7.